# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2963

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Sonny Ray Escarsega, also | * | |
| known as Sonny Ray Ruiz, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: January 11, 2006
Filed: June 5, 2006

_____

Before MELLOY, HANSEN, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

After a jury trial, Sonny Ray Escarsega was convicted of one count of kidnapping Victoria Roubideaux, in violation of 18 U.S.C. §§ 1153 and 1201(a)(2); two counts of causing her to engage in a sexual act by using threats or force, in violation of 18 U.S.C. §§ 1153, 2241(a), and 2246(2); and four counts of assaulting her with a dangerous weapon, in violation of 18 U.S.C. §§ 1153 and 113(a)(3). The district court[1] imposed concurrent sentences totaling 216 months imprisonment and

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

5 years supervised release. Escarsega's counsel has moved to withdraw and filed a brief under Anders v. California, 386 U.S. 738 (1967). After careful review of the record under Penson v. Ohio, 488 U.S. 75, 80 (1988), we ordered additional briefing regarding a challenge under Batson v. Kentucky, 476 U.S. 79 (1986). For the reasons discussed below, we affirm.

Escarsega argues the evidence was insufficient to sustain the jury convictions. When considering such a claim, we view the facts in the light most favorable to the government, giving it the benefit of drawing all reasonable inferences from the evidence. See United States v. Goodlow, 105 F.3d 1203, 1205 n.2 (8th Cir. 1997). We conclude the evidence was clearly sufficient to support the convictions for assaulting Roubideaux with a dangerous weapon, as she testified Escarsega stabbed her with a knife, hit her in the head with a telephone receiver, kicked her with shod feet, and cut her back with a razor blade.

As to the sexual-assault convictions, we conclude a reasonable jury could find beyond a reasonable doubt that Escarsega forced Roubideaux to engage in a sexual act. See 18 U.S.C. § 2241(a) (unlawful to knowingly cause another person to engage in sexual act by using force or threat against that person); United States v. Gabe, 237 F.3d 954, 961 (8th Cir. 2001) (force is established if defendant overcomes, restrains, or injures victim, or if defendant uses threat of harm sufficient to coerce or compel submission). Although Roubideaux testified at trial she had consensual sex with Escarsega, she also admitted at trial she had told the FBI and testified before the grand jury that he forced her to have sex, and that she was afraid to refuse him. The jury was free to credit her prior statements. Cf. United States v. Renville, 779 F.2d 430, 439-40 (8th Cir. 1985) (discussing hearsay exception in child-sexual-abuse case; where declarant admits she made accusations to police, but testifies these earlier statements were lies, jury faces routine question of credibility). In addition, the evidence clearly established that Escarsega assaulted Roubideaux numerous times, including once when she refused to have sex with him. See United States v.

Nazarenus, 983 F.2d 1480, 1485 n.1 (8th Cir. 1993) (noting there was abundant evidence that victim was physically forced to engage in sexual acts, including testimony regarding how badly victim was beaten and traumatized after encounter with defendant).

As to the kidnapping conviction, we conclude a reasonable jury could find beyond a reasonable doubt that Escarsega held Roubideaux against her will. See 18 U.S.C. § 1201(a)(2) (unlawful to kidnap and hold any person within territorial jurisdiction of United States); United States v. McCabe, 812 F.2d 1060, 1061 (8th Cir.) (victim's lack of consent is fundamental element of kidnapping), cert. denied, 484 U.S. 832 (1987). Although Roubideaux testified at trial she chose to stay with Escarsega, she also admitted at trial she had told the FBI and testified before the grand jury that he would not let her leave and threatened to kill her if she left. Again, the jury could discredit her trial testimony, but credit her prior statements.

Next, Escarsega argues the district court erred in denying his motion to suppress evidence obtained pursuant to a search warrant. In his application for the warrant and at the suppression hearing, FBI Special Agent Mackey testified that after interviewing Roubideaux, he went to the apartment where she stated she had been held and assaulted. There, Edward Charging Elk, Sr., initially did not consent to a search of the apartment, but later allowed officers to search for Escarsega. During this search, Mackey observed evidence of the assaults against Roubideaux, and obtained the search warrant in part based upon his observations.

We conclude the district court properly denied the motion to suppress. Even though he did not lease the apartment, Charging Elk had lived there for about five months prior to the search and thus had common authority over the apartment. See Illinois v. Rodriguez, 497 U.S. 177, 181 (1990) (warrantless search of residence does not violate Fourth Amendment if voluntary consent is obtained from third party who possesses common authority over property); United States v. Matlock, 415 U.S. 164,

171 n.7 (1974) ("common authority" not determined by property interest, but by mutual use of property by persons generally having joint access or control for most purposes). Even if Charging Elk did not have actual authority to consent to the search, the officers who conducted the search reasonably believed that he had such authority, given their belief that Charging Elk lived at the apartment, and his previous display of authority over the apartment by initially refusing to give Mackey consent to search. See Rodriguez, 497 U.S. at 185-86 (police must reasonably believe at time of search that person consenting has authority to do so); United States v. Czeck, 105 F.3d 1235, 1239 (8th Cir. 1997) (relevant inquiry is whether facts available would have justified reasonable officer's belief that consenting party had authority over premises).

Escarsega also argues the court erroneously denied his motion to sever the counts of the indictment. We conclude, however, that the counts were properly joined in one indictment and that Escarsega was not severely prejudiced by joinder. The sexual-assault and assault counts that he sought to sever involved similar conduct as the sexual-assault and assault counts that would remain, all of the conduct was alleged to have occurred within a ten-month period, and the evidence on each count would have been admissible at a trial on the other counts. See Fed. R. Crim. P. 8(a), 14(a); United States v. Boyd, 180 F.3d 967, 981-83 (8th Cir. 1999).

Next, we reject Escarsega's contention that the district court erred in admitting evidence that he had assaulted Roubideaux on two prior occasions. See Fed. R. Evid. 404(b); Arcoren v. United States, 929 F.2d 1235, 1243 (8th Cir.) (district court has broad discretion to admit other-act evidence, and its determination will be upheld absent abuse of discretion; evidence is admissible under Rule 404(b) if evidence is relevant, other act is similar in kind and reasonably close in time to charged offense, evidence of other act is clear and convincing, and evidence's probative value does not outweigh its prejudice), cert. denied, 502 U.S. 913 (1991). The evidence of his other assaults was relevant to show that he intended to cause bodily harm during the

charged offense, and that Roubideaux feared bodily injury if she refused sexual intercourse; the other assaults were similar to the charged assaults that occurred a year later; Roubideaux's testimony clearly and convincingly established that the other assaults occurred; and the evidence was more probative than prejudicial, as the district court twice instructed the jury that such evidence was admitted only for proving intent.

Next, Escarsega asserts the district court should have granted him a mistrial when the government asked an FBI agent on direct examination whether he requested Escarsega to provide a written or tape-recorded statement at the end of an interview. We conclude the district court did not abuse its discretion in denying a mistrial because, even assuming the government's question impinged on Escarsega's right to remain silent, the question did not deprive him of a fair trial. See United States v. Hale, 1 F.3d 691, 694 (8th Cir. 1993) (standard of review; mistrial warranted where prosecutor's improper remarks were so offensive as to deprive defendant of fair trial). The FBI agent had already testified that Escarsega agreed to be interviewed and talked about the charges, and the court instructed the jury to disregard the question.

Escarsega also contends the district court should have excluded expert testimony on Battered Woman Syndrome (BWS) because the government did not provide him with sufficient notice. We find no abuse of discretion in allowing the expert testimony. See Arcoren, 929 F.2d at 1238-40. Escarsega did not request disclosure of written summaries of expert testimony, see Fed. R. Crim. P. 16(a)(1)(G), and the government learned of the need to present expert testimony on BWS shortly before trial when Roubideaux indicated she would recant her previous statements, see Arcoren, 929 F.2d at 1242 (government's calling expert to testify on BWS was reasonable response to victim's recantation of prior statements on first day of trial; nondisclosure of intent to call expert witness did not deny defendant due process).

Last, we find the district court did not clearly err in denying Escarsega's challenge under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), based on the government's strike of the only remaining Native American on the jury panel.  The government offered race-neutral reasons for the strike, including concern that the person's body language was "very closed" during government questioning.  <u>See</u> <u>McKeel v. City of Pine Bluff</u>, 73 F.3d 207, 210-11 (8th Cir. 1996).

The judgment of the district court is affirmed.

_____